**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**UNITED STATES OF AMERICA,**

$\hspace{10cm}$ **PLAINTIFF**

**ARIENNE JONES, DERIC JONES,**
**HERSCHEL WILLIAMS, and**
**TANSHENETTA ROBISKIE,**

$\hspace{8cm}$ **PLAINTIFF-INTERVENORS**

**v.**  $\hspace{4cm}$ **CIVIL ACTION NO.:  3:20-cv-00729-CWR-LGI**

**SSM PROPERTIES, LLC, STEPHEN MAULDING, SR.,**
**JAMES ROE, and SHEILA MAULDING,**  $\hspace{3cm}$ **DEFENDANTS**

**<u>CONSENT DECREE</u>**

**I.      INTRODUCTION**

1.      The United States initiated this action on November 12, 2020, against SSM

Properties, LLC, Stephen Maulding Sr., James Roe, and Sheila Maulding, to enforce the Fair

Housing Act, 42 U.S.C. §§ 3601-3619.  Compl., ECF No. 1.  The United States filed this action

on behalf of four Black fair housing testers, Arienne Jones, Deric Jones, Herschel Williams, and

Tanshenetta Robiskie (formerly Tanshenetta Veals), and alleges that defendants engaged in a

pattern or practice of discrimination because of race and denied rights protected by the Fair

Housing Act to a group of persons that raises an issue of general public importance.  *See* 42

U.S.C. §§ 3612(o) & 3614(a).  On March 18, 2021, the Court granted leave for these individuals

to intervene as plaintiffs, ECF No. 29, and on April 15, 2021, these individuals filed a complaint

in intervention, ECF No. 32.

2.      At all times relevant to this action, Defendants owned and/or managed three rental

properties:  Oak Manor Apartments ("Oak Manor"), located at 2592 Old Country Club Road,

Pearl, Mississippi; Pearl Manor Apartments ("Pearl Manor"), located at 200 Lonnie T. Jenkins Drive (formerly George Wallace Drive), Pearl, Mississippi; and 468 Place Townhomes ("the Townhomes"), located at 2932 State Highway 468, Pearl, Mississippi.  On or about August 14, 2018, defendants Stephen Maulding and SSM Properties, LLC sold Oak Manor to a third party.

3.     The United States and Plaintiff-Intervenors allege that between November 2016 and November 2017, Defendants discriminated against the Black testers on the basis of race during four separate visits to Defendants' properties.  Specifically, Black testers were not told about unit vacancies at two of Defendants' properties, Pearl Manor and the Townhomes, while White testers who visited around the same time were told of vacancies at these properties and encouraged to rent there.  The United States also alleges that Defendant James Roe told Tanshenetta Robiskie that Ms. Robiskie could not rent an apartment at Pearl Manor because the current residents, almost all of whom were White, would "have a heart attack" and "be thinking I done let the zoo out again."  For other Black testers, Defendants applied differing rental qualification criteria than for White testers, including requiring more detailed income and expense information for Black testers, as well as telling Black testers that they were required to have current employment.  The United States alleges that Defendants, through these actions, denied or made housing unavailable on the basis of race, in violation of 42 U.S.C. § 3604(a), discriminated in the terms, conditions, and privileges of housing based on race, in violation of 42 U.S.C. § 3604(b); made discriminatory statements in violation of 42 U.S.C. § 3604(c); and represented, because of race, that a dwelling was not available for inspection or rental when, in fact, the dwelling was available, in violation of 42 U.S.C. § 3604(d).

4.     On April 12, 2022, the Court denied the motion for summary judgment filed by Defendants Stephen and Sheila Maulding and SSM Properties.  ECF No. 95; *see also United*

*States v. SSM Props.*, --- F. Supp. 3d ---, 2022 WL 1094655 (S.D. Miss. Apr. 12, 2022). On

August 3, 2022, the Court granted summary judgment in favor of the United States and Plaintiff-

Intervenors on liability against all Defendants. ECF No. 123; *see also United States v. SSM*

*Props.*, 2022 WL 3093285 (S.D. Miss. Aug. 3, 2022).

     5.     The parties have voluntarily agreed, as indicated by the signatures below, to

resolve all claims arising from the facts of this case without the need for further litigation.

     Accordingly, it is ORDERED, ADJUDGED, and DECREED as follows:

## II.    GENERAL INJUNCTION

     6.     The terms of this Decree shall apply to all rental properties owned, operated,

and/or managed by any Defendant, including Pearl Manor and the Townhomes.

     7.     Defendants, their agents (whose duties, in whole or in part, involve the

management, maintenance, or rental of dwellings), employees, and successors are hereby

enjoined, with respect to the rental of dwellings, from:

         a.     Refusing to rent a dwelling, refusing or failing to provide or offer

information about an available dwelling, refusing to negotiate for the

rental of a dwelling, or otherwise making unavailable or denying a

dwelling to any person because of (i) the race of that person or any person

in the household, (ii) the race of persons residing in the household, or (iii)

the race of any person associated with the household;

         b.     Discriminating against any person in the terms, conditions, or privileges of

the rental of a dwelling, or in the provision of services or facilities in

connection therewith, because of race;

    c.    Refusing to show an available dwelling to a person, or discouraging any person from inspecting or renting a unit, because of race; and

    d.    Misrepresenting dwelling information or availability to a person because of race.

## III. INJUNCTIVE RELIEF AS TO DEFENDANTS STEPHEN MAULDING, SR., SHEILA MAULDING, AND SSM PROPERTIES, LLC

### A. Announcement of Fair Housing Policy

8. Within thirty (30) days from the entry of this Decree, Defendants Stephen Maulding, Sr., Sheila Maulding, and SSM Properties LLC (collectively, the "Owner Defendants") shall post and prominently display at Pearl Manor and the Townhomes, and any other residential rental property they own or manage, a sign no smaller than 11 inches by 14 inches indicating that all units are available for rental on a nondiscriminatory basis. An 11-by-14-inch poster that comports with 24 C.F.R. Part 110, including HUD Form 928.1 (https://www.hud.gov/sites/documents/928.1.PDF) or a comparable sign, satisfies this requirement.

9. The Owner Defendants shall ensure that all advertising for the dwellings they own and/or manage in newspapers, in telephone directories, on radio, on television, on the internet, or in other media, and all signs, pamphlets, brochures, rental applications, leases, and other promotional literature includes a fair housing logo, the phrase "Equal Housing Opportunity," and/or the following sentences: "We are an equal opportunity housing provider. We do not discriminate on the basis of race, color, religion, sex, disability, familial status, or national origin."

**B.      Standards and Procedures to Ensure Non-Discrimination in the Provision of Rental Housing**

10.      Within sixty (60) days from the entry of this Decree, the Owner Defendants shall develop and submit to the United States, with respect to all the residential rental properties they own or manage, in whole or in part, objective, uniform, nondiscriminatory standards and procedures for informing persons about and showing available dwelling units or lots to prospective tenants.  These standards and procedures shall be approved by the United States in advance of their implementation and shall be consistent with the provisions of this Section. Within fifteen (15) days of when the United States approves these standards and procedures, the Owner Defendants shall implement and prominently display them in any office where there is rental activity and/or personal contact with applicants.  The Owner Defendants and their agents and employees shall make available a copy of these standards and procedures to any applicant for the rental of a dwelling.  These standards and procedures may be modified only if written notice is given to counsel for the United States thirty (30) days before the proposed modifications are to take effect and the United States makes no objection thereto.

11.      The nondiscriminatory standards and procedures discussed in Paragraph 10 above shall include the use of the following documents, which the Owner Defendants shall update as new information becomes available, and retain:

        a.  *Guest Cards:*  The Owner Defendants shall ensure that, for all prospective tenants who inquire in person about dwelling units or lots, a Guest Card or other similar record is completed, either by the prospective tenant and/or Defendant, that contains:

i.      The date of the prospective tenant's visit and, when the prospective tenant agrees to provide the information, the prospective tenant's name, address, and phone numbers;

ii.      The prospective tenant's race, based on good faith observation;

iii.      The dwelling type the prospective tenant requests;

iv.      Whether the prospective tenant agreed to rent and the date on which the prospective tenant wishes to move;

v.      Whether the prospective tenant was invited to see available dwelling units, and if not invited, an explanation why not; and

vi.      The names of all individuals who assisted the prospective tenant.

b.      *Phone Logs:* The Owner Defendants shall maintain, for all prospective tenants who inquire by telephone about dwelling units or lots, a phone log that contains the following information:

i.      The date of the prospective tenant's phone call and, when the prospective tenant agrees to provide the information, the prospective tenant's name and telephone number(s);

ii.      The dwelling type the prospective tenant requests;

iii.      Whether the prospective tenant was invited to see available dwelling units or lots, and if not invited, an explanation why not;

iv.      The date and time on which the prospective tenant is going to view the dwellings;

6

        v.      Whether the prospective tenant agreed to rent and the date on which the prospective tenant wishes to move; and

        vi.     The names of all individuals who assisted the prospective tenant.

c.     *Availability List:*  The Owner Defendants shall develop, and update promptly whenever there is a change in relevant information, a Unit Availability List for each rental property owned or managed by the Owner Defendants.  This list shall identify all units that are known to be available, and those reasonably expected to be available, for rental within sixty (60) days.  For each such unit, the Unit Availability List will identify:  (i) the street address; (ii) the number of bedrooms; (iii) whether the unit is vacant and, if not, the date on which it is expected to be vacant; (iv) whether the unit is available to be moved into and, if not, the date on which it is expected to be available for move-in; (v) the monthly rent; and (vi) the date on which the list was last updated.  Each month, the Owner Defendants shall update the list and maintain a copy of the then-current version of the list.  The Owner Defendants shall ensure that the information on the Unit Availability List is shared with each person who visits or calls to inquire about the availability of dwelling units for rent.

d.     *Waiting Lists:*  If any prior units are occupied, the Owner Defendants shall maintain a Waiting List in the order of the date a prospective tenant was deemed qualified to rent and develop uniform standards for selecting individuals from the list.

12.     The Owner Defendants shall inform all persons who inquire about renting any dwelling that they may fill out an application and, if no unit is immediately available and they qualify, they will be placed on a waiting list; that they will be offered the first available unit when they become the highest-ranking applicant on the waiting list; and that they will be treated equally, irrespective of race or other protected category.  Further, the Owner Defendants shall make any dwelling that is vacant available to show to any person who inquiries about renting.

**C.     Retention of an Independent Leasing Manager for Pearl Manor and the Townhomes**

13.     Within sixty (60) days from the entry of this Decree, the Owner Defendants shall retain an Independent Leasing Manager, to be approved in advance by the United States, to perform all leasing duties at Pearl Manor and the Townhomes.  "Leasing duties" as used in this Decree means showing or renting housing units; processing rental applications; determining tenant eligibility for subsidies or waivers of fees and rents; interacting with prospective tenants; and completing the Guest Cards, Phone Logs, and Availability Lists described in Paragraph 11. An "Independent Leasing Manager" is an individual or entity experienced in managing rental properties and who has no current or past employment, financial, contractual, personal, or familial relationship with Defendants.

14.     Within thirty (30) days of entry of this Decree, the Owner Defendants shall propose two candidates for this position who meet the qualifications set forth in Paragraph 13 above, of which Plaintiff-Intervenors shall select one, subject to the approval of the United States.  If the parties do not agree that either of the Owner Defendants' candidates meets the requirements set forth Paragraph 13, the parties will confer and attempt to agree on an alternative candidate before raising this matter with the Court.

15.     Within ninety (90) days from the entry of this Decree, the parties will file a joint report with the Court confirming that the Owner Defendants retained an Independent Leasing Manager selected by Plaintiff-Intervenors and approved by the United States as described above, or otherwise reporting on the status of the Owner Defendants' identification and hiring of an Independent Leasing Manager.

16.     If, after retaining an Independent Leasing Manager, the Owner Defendants wish to change the Independent Leasing Manager for any reason, they will submit the name of the prospective manager, in writing, to the United States and Plaintiff-Intervenors for written approval at least ten (10) days prior to retaining the individual or entity.

### D.     Fair Housing Training

17.     Within sixty (60) days from the entry of this Decree, the Owner Defendants and any of their employees or agents, including the Independent Leasing Manager retained under Section III.D, *supra*, shall undergo training on all applicable aspects of the Fair Housing Act pertaining to residential rental property and programs, with specific emphasis on discrimination on the basis of race.  The training shall be conducted by an independent, qualified third party, not associated with any Defendant or their counsel, approved in advance by the United States, and shall last at least two hours.  In advance of the training, the Owner Defendants shall submit to the United States the name of the training provider and contact information, and the proposed trainer shall provide the United States a copy of a substantive outline of the content and materials, including any handouts and slides, that the trainer intends to include.  The United States may contact the proposed trainer for additional information or to answer questions about the training

to assess whether to approve the training. Any expenses associated with the training shall be borne by the Owner Defendants.

18. All persons attending the training program shall have their attendance certified in writing by the person or organization conducting the program within ten (10) days of the completed training. With the consent of the trainer, the Owner Defendants may videotape the program for purposes of training employees hired after the date of the initial training. Each individual who receives the training shall execute the Training Certificate attached as Appendix A.

19. All new agents or employees responsible for renting, managing, and/or operating dwelling units at any of the Owner Defendants' residential rental properties shall receive the fair housing training described in Paragraph 17 within thirty (30) days of beginning their employment or agency and shall complete Appendix A.

## IV. INJUNCTIVE RELIEF AS TO DEFENDANT JAMES ROE

20. Defendant Roe is permanently enjoined from directly or indirectly performing any work or other duties, including but not limited to any property management responsibilities, at any residential rental property, whether or not for compensation. "Property management responsibilities" include, but may not be limited to, showing or renting housing units; processing rental applications; determining tenant eligibility for subsidies or waivers of fees and rents; inspecting dwelling units; collecting rent and fees; entering rental units; interacting with prospective or current tenants; and overseeing any aspect of the rental process.

21. The Owner Defendants confirm that defendant James Roe is not currently employed by them in any capacity. The Owner Defendants are enjoined from hiring, retaining, or otherwise using or relying on defendant Roe for any purpose, whether or not for

10

compensation, related to the management, operation, or maintenance of the Owner Defendants' rental properties, including but not limited to any property management responsibilities.

## V.     COMPLIANCE TESTING

22.     The United States may take steps to monitor Defendants' compliance with this Decree, including, but not limited to, by conducting fair housing tests at any location at which any Defendant, now or in the future, conducts rental activities.  The Louisiana Fair Housing Action Center may also conduct fair housing tests at Defendants' residential rental properties.

## VI.    RECORD RETENTION AND REPORTING REQUIREMENTS

23.     The Owner Defendants shall preserve all records related to this Decree and to the rental of any dwelling units the Owner Defendants own or manage.  Whether in print or electronic form, the documents include, but are not limited to, all lists, logs, directories, and records created under Section III of this Decree; applications; tenant files; correspondence or notes relating to rental applications or applicants; advertisements; and web or social media postings.  Upon reasonable notice to the Owner Defendants, the United States may inspect and copy any records related to this Decree to determine compliance.

24.     Within ninety (90) days from the entry of this Decree, and at six-month intervals thereafter, the Owner Defendants shall deliver[1] to the United States a report containing information about the compliance efforts during the preceding reporting period, including:

---

[1]  All documents, notices, communications, and other written materials required by this Decree shall be sent to the United States via email, addressed as follows: Max.Lapertosa@usdoj.gov and Katherine.Raimondo@usdoj.gov.  Materials may also be submitted by overnight delivery addressed as follows:

> Chief, Housing and Civil Enforcement Section
> Civil Rights Division
> United States Department of Justice
> 4 Constitution Square

a.  Executed copies of Appendix A not previously provided;

b.  Photograph(s) of the fair housing posters indicating where they are posted;

c.  Copies of all documents referenced in Section III and generated in the current reporting period, including guest cards, availability lists, and waiting lists;

d.  Copies of any published advertisements, brochures distributed, or other paper or electronic information about any dwellings owned or managed by the Owner Defendants made available to the public, since the previous report; and

e.  All other documents or information required to be provided to the United States under this Decree and not previously provided.

The final report shall be submitted to the United States not later than sixty (60) days before the expiration of this Decree.

25.  The Owner Defendants shall notify counsel for the United States in writing within ten (10) days of receipt of any formal or informal housing discrimination complaint (including all written and oral complaints) against any of them or any of their employees or agents, related to any residential rental property owned, managed, or operated by the Owner Defendants.  The Owner Defendants shall provide the United States copies of the written complaints and a detailed summary of oral complaints with the notification.  The notification shall include the full details of each complaint, including the complainant's name, address, and telephone number and the

---

150 M St. NE
Washington, DC 20001
Attn: DJ #175-41-231

basis of the complaint. The Owner Defendants shall also promptly provide to the United States all information it requests concerning any such complaint and any actual or attempted resolution.

## VII. ACQUISITION, SALE, OR TRANSER OF OWNERSHIP INTEREST IN RESIDENTIAL PROPERTIES

26.     If any Defendant acquires a direct or indirect ownership, management, or other financial interest in any other residential rental property, that property shall become subject to the injunctive provisions in Section II and III of this Consent Decree, as applicable. Defendants shall notify counsel for the United States within thirty (30) days of acquiring such an interest. The notice shall identify the nature of each Defendant's interest in the property; the address; the number of individual dwelling units; the names of any existing tenants; the race of each such tenant, if known; and any other information required under this Decree. Defendants shall also provide the United States a copy of the documents memorializing the transfer in interest.

27.     If, at any time while this Decree remains in effect, the Owner Defendants sell or transfer all or part of their interest in any residential rental property they own to a bona fide, independent third-party purchaser in an arms-length transaction, the property will cease to be subject to this Decree, except as provided in Paragraphs 27 and 28, below. In the event of such an arm's-length transaction, the Owner Defendants shall inform the United States within seven (7) days of the transaction and provide the date of the sale or transfer, copies of the sale or transfer documents, and the name(s) and contact information for the subsequent purchaser(s) or transferee(s).

28.     If any sale or transfer of the Owner Defendants' interest in any part of any residential rental property they own is not an arm's-length transaction, the Owner Defendants and the new owner(s) or transferee(s) shall remain jointly and severally liable for any violations of this Decree.

29.     For purposes of this Decree, a "bona fide, independent third-party purchaser" is one with whom no Defendant in this action has any current or past financial, contractual, organizational, governmental, personal, or familial relationship.  An "arms-length transaction" is one that has been arrived at in the marketplace between independent, non-affiliated persons, unrelated by blood or marriage, with opposing economic interests regarding that transaction.  A corporation or entity for which any Defendant is or was an officer, partner, employee, or agent, or in which any Defendant has or had an ownership, financial or controlling interest, is not a "bona fide, independent third-party purchaser," and any transaction involving such a purchaser will not qualify as an "arms-length transaction."

## VIII.   MONETARY DAMAGES AND ATTORNEYS' FEES TO PLAINTIFF-INTERVENORS

30.     The Owner Defendants shall pay a total of ONE HUNDRED TEN THOUSAND DOLLARS ($110,000) to Plaintiff-Intervenors in satisfaction of claims for monetary damages and attorneys' fees, as follows:

a.      Within sixty (60) days of entry of this Decree, the Owner Defendants shall send a cashier's check or money order in the amount of TWENTY THOUSAND DOLLARS ($20,000) to counsel for Plaintiff-Intervenors, with a copy of the check sent to the United States.

b.      Within ninety (90) days of entry of this Decree, the Owner Defendants shall establish an interest-bearing escrow account ("Escrow Account") and immediately deposit a sum of THREE THOUSAND SEVEN HUNDRED AND FIFTY DOLLARS ($3,750).  The Escrow Account shall be established for the sole purpose of compensating Plaintiff-Intervenors for damages and attorneys' fees.  Within five (5) business days of the

14

establishment of the Escrow Account, the Owner Defendants shall submit proof to the United States and Plaintiff-Intervenors that the account has been established and the funds deposited.

c.   Within ninety (90) days of entry of this Decree, the Owner Defendants shall identify a third-party individual to serve as Administrator of the Escrow Account. The Administrator must be approved in writing by the United States and Plaintiff-Intervenors. The Owner Defendants shall bear any costs associated with the Administrator.

d.   After establishment of the Escrow Account, the Owner Defendants shall continue to make monthly deposits into the Escrow Account of at least three thousand seven hundred and fifty dollars ($3,750) until a total amount of ninety thousand dollars ($90,000) has been deposited, but in no event shall the total amount be deposited any later than two (2) years following establishment of the Escrow Account. Any interest accruing in the Escrow Account shall become a part of the Escrow Account and be utilized as set forth herein.

e.   On or before the fifteenth of each month, the Owner Defendants shall provide proof to the United States and Plaintiff-Intervenors of their deposits into the Escrow Account for the previous month.

f.   Six (6) months after the date of establishment of the Escrow Account, and every six months thereafter for a period of two (2) years, the Administrator shall disburse the full amount in the Escrow Account by sending via overnight delivery a cashier's check or money order in that

15

amount to counsel for the Plaintiff-Intervenors, with a copy to the United States. In no event shall the aggregate of all such checks issued from the Escrow Account exceed the sum of the Escrow Account plus accrued interest.

g.    The Owner Defendants shall be solely responsible for any taxes assessed or owed on any interest earned on money deposited to the Escrow Account.

h.    The Owner Defendants shall provide an accounting of the Escrow Account upon request by the United States and/or Plaintiff-Intervenors.

i.    The Owner Defendants' obligation to pay damages and attorneys' fees under this Decree shall not be contingent upon the sale of the primary residence of Stephen and Sheila Maulding or any other real or personal property. However, should the Mauldings sell their primary residence prior to having fully satisfied their payment obligations under this paragraph, the Owner Defendants shall first use the proceeds of this sale to pay the entire outstanding amount of monetary damages owed under this paragraph, irrespective of the payment schedule set forth above.

31.    The requirement to pay damages under this Section is a debt within the meaning of 11 U.S.C. § 523(a)(6). Accordingly, the Owner Defendants shall not seek to discharge any part of this debt in bankruptcy.

## IX.    CIVIL PENALTIES

32.    The Owner Defendants shall pay a total of TEN THOUSAND DOLLARS ($10,000) to the United States as a civil penalty under 42 U.S.C. § 3614(d)(1)(C) to vindicate the

public interest, as follows:  five thousand dollars ($5,000) within sixty (60) days of entry of this Decree and five thousand dollars ($5,000) within eight (8) months of entry of this Decree.  These payments shall be made in the form of an electronic funds transfer in accordance with written instructions to be provided by the United States.

33.     Defendant Roe shall pay a total of THREE THOUSAND DOLLARS ($3,000) to the United States as a civil penalty under 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest, as follows:  five hundred dollars ($500) within ninety (90) days of entry of this Decree, followed by five payments of five hundred dollars ($500) every ninety (90) days thereafter until paid in full, but in no event shall the full amount be paid any later than eighteen (18) months following entry of this Decree.  These payments shall be made in the form of an electronic funds transfer in accordance with written instructions to be provided by the United States.

34.     The civil penalty payment obligations of this Section are a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7) and is not compensation for actual pecuniary loss.  Defendants will not seek to discharge any part of this debt in bankruptcy.

35.     In the event that Defendants, their agents, or employees engage in any future violation(s) of the Fair Housing Act, such violation(s) shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

## X.     OWNER DEFENDANTS' VERIFICATION OF FINANCIAL STATUS

36.     The parties' agreement on monetary damages and civil penalties as set forth above is based on and subject to the Owner Defendants having fully disclosed and accurately represented their current financial status and net worth.  Should the United States and/or Plaintiff-Intervenors determine that the Owner Defendants have materially misrepresented their

17

financial status, either the United States or Plaintiff-Intervenors may move the Court for additional relief.

## XI.    ATTORNEYS' FEES AND COSTS

37.    Except as otherwise stated herein, each party shall bear their own fees and costs.

## XII.    SCOPE, DURATION, AND ENFORCEMENT

38.    This Decree shall be in effect for a period of three (3) years from the date of its entry. The Court shall retain jurisdiction for the duration of this Decree to enforce its terms, after which time the case shall be dismissed with prejudice.  The United States and/or Plaintiff-Intervenors may move the Court to extend the duration of the Decree in the event of noncompliance, whether intentional or not, with any of its terms, or if it believes the interests of justice so require.

39.    The parties shall endeavor in good faith to resolve informally any differences regarding the interpretation of and compliance with this Decree before bringing any matters to the Court for resolution.  However, in the event that the United States and/or Plaintiff-Intervenors contend that there has been a failure by any Defendant, whether willful or otherwise, to perform in a timely manner any act required by this Decree or otherwise to act in conformance with any provision thereof, the United States and/or Plaintiff-Intervenors may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of the act or deeming the act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees occasioned by the violation or failure to perform.

40.    Any time limits for performance imposed by this Decree may be extended by mutual written agreement of the parties.

## XIII. LITIGATION HOLDS

41.     The parties agree that, as of the date of entry of this Decree, litigation is not

reasonably foreseeable concerning the matters described herein. To the extent that any party

previously implemented a litigation hold to preserve documents, electronically stored

information, or things related to the matters described in this Decree, the party is no longer

required to maintain such a litigation hold.  However, nothing in this Decree relieves the Owner

Defendants of the record-keeping responsibilities imposed by this Decree.

IT IS SO ORDERED this _31st_ day of _October_ , 2022.

THE HON. CARLTON W. REEVES
UNITED STATES DISTRICT JUDGE

19

The undersigned apply for and consent to the entry of this Decree:

*For the United States of America:*

Dated: __Oct. 12__ , 2022

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement

MICHAEL S. MAURER
Deputy Chief
MAX LAPERTOSA
KATHERINE RAIMONDO
NATHAN SHULOCK
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. – 4CON
Washington, DC 20530
Tel: (202) 305-1077
Fax: (202) 514-1116
Max.Lapertosa@usdoj.gov
Katherine.Raimondo@usdoj.gov

*For Plaintiff-Intervenors:*

Dated: _____, 2022

LOUISIANA FAIR HOUSING ACTION CENTER

_____

CASHAUNA HILL
SARAH CARTHEN WATSON
JODI HILL
1340 Poydras Street, Suite 710
New Orleans, LA 70112
Tel: (504) 708-5671
chill@lafairhousing.org

ROBERT B. MCDUFF
MISSISSIPPI CENTER FOR JUSTICE
767 N. Congress St.
Jackson, MS 39202
Tel: (601) 259-8484
rbm@mcdufflaw.com


_____

ARIENNE JONES


_____

DERIC JONES


_____

TANSHENETTA ROBISKIE


_____

HERSCHEL WILLIAMS

*For Plaintiff-Intervenors:*

Dated: _____, 2022

LOUISIANA FAIR HOUSING ACTION CENTER

_____
CASHAUNA HILL
SARAH CARTHEN WATSON
JODI HILL
1340 Poydras Street, Suite 710
New Orleans, LA 70112
Tel: (504) 708-5671
chill@lafairhousing.org

ROBERT B. MCDUFF
MISSISSIPPI CENTER FOR JUSTICE
767 N. Congress St.
Jackson, MS 39202
Tel: (601) 259-8484
rbm@mcdufflaw.com

_____
ARIENNE JONES

_____
DERIC JONES

_____
TANSHENETTA ROBISKIE

_____
HERSCHEL WILLIAMS

21

*For Plaintiff-Intervenors:*

Dated: _October 12_, 2022

LOUISIANA FAIR HOUSING ACTION CENTER

_____

CASHAUNA HILL
SARAH CARTHEN WATSON
JODI HILL
1340 Poydras Street, Suite 710
New Orleans, LA 70112
Tel: (504) 708-5671
chill@lafairhousing.org

ROBERT B. MCDUFF
MISSISSIPPI CENTER FOR JUSTICE
767 N. Congress St.
Jackson, MS 39202
Tel: (601) 259-8484
rbm@mcdufflaw.com

_____

ARIENNE JONES

_____

DERIC JONES

_____

TANSHENETTA ROBISKIE

_____

HERSCHEL WILLIAMS

*For Plaintiff-Intervenors:*

Dated: _October 13_ , 2022

LOUISIANA FAIR HOUSING ACTION CENTER

_____

CASHAUNA HILL
SARAH CARTHEN WATSON
JODI HILL
1340 Poydras Street, Suite 710
New Orleans, LA  70112
Tel: (504) 708-5671
chill@lafairhousing.org

ROBERT B. MCDUFF
MISSISSIPPI CENTER FOR JUSTICE
767 N. Congress St.
Jackson, MS  39202
Tel: (601) 259-8484
rbm@mcdufflaw.com

_____

ARIENNE JONES

_____

DERIC JONES

_____

TANSHENETTA ROBISKIE

_____

HERSCHEL WILLIAMS

*For Plaintiff-Intervenors:*

Dated: _____, 2022

                                        LOUISIANA FAIR HOUSING ACTION CENTER

                                        _____

                                        CASHAUNA HILL
                                        SARAH CARTHEN WATSON
                                        JODI HILL
                                        1340 Poydras Street, Suite 710
                                        New Orleans, LA 70112
                                        Tel: (504) 708-5671
                                        chill@lafairhousing.org

                                        ROBERT B. MCDUFF
                                        MISSISSIPPI CENTER FOR JUSTICE
                                        767 N. Congress St.
                                        Jackson, MS 39202
                                        Tel: (601) 259-8484
                                        rbm@mcdufflaw.com

                                        _____

                                        ARIENNE JONES

                                        _____

                                        DERIC JONES

                                        _____

                                        TANSHENETTA ROBISKIE

                                        _____
                                        HERSCHEL WILLIAMS

*For Defendants SSM Properties, Stephen Maulding, Sr., and Sheila Maulding:*

Dated: _____, 2022

MARTIN & MARTIN, P.A.

DESHUN T. MARTIN
VATERRIA M. MARTIN
228 Capitol St.
Jackson, MS  39201
Tel: (601) 355-0955
Fax: (601) 355-0957
DTMartin@4MartinsAtLaw.com

STEPHEN MAULDING, SR.

SHEILA MAULDING

22

*For Defendant James Roe:*

Dated: _____ /D- / / _____, 2022

_____
JAMES ROE

## APPENDIX A

### TRAINING CERTIFICATE

I acknowledge that on _____, 202___, I completed training conducted by _____(name of trainer) of _____ (name of organization or firm) on the requirements of the federal Fair Housing Act as required by the Consent Decree entered by the United States District Court for the Southern District of Mississippi in *United States v. SSM Properties et al.,* No. 20-cv-00729.  I have also received and read a copy of the Consent Decree and understand its requirements.

_____
Signature/Printed Name

_____
Job Title/Position

_____
Date